UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

NORMAN SANDERS (#197433)                                          CIVIL ACTION

VERSUS

JERRY GOODWEEN, ET AL.                                            NO. 12-0440-SDD-RLB

**NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on October 9, 2013.

                                                                            _____
                                                                            RICHARD L. BOURGEOIS, JR.
                                                                            UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

NORMAN SANDERS (#197433)                                              CIVIL ACTION

VERSUS

JERRY GOODWEEN, ET AL.                                                NO. 12-0440-SDD-RLB

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The pro se plaintiff, an inmate currently confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, and previously confined at David Wade Correctional Center ("DWCC"), Homer, Louisiana, brought this action pursuant to 42 U.S.C. § 1983 against LSP Warden Burl Cain, LSP Ass't Warden Tim Delaney, DWCC Warden Jerry Goodween, DWCC Col. Nail, and several unidentified "John Doe" classification officers and security officers employed at LSP and DWCC, complaining that the defendants violated his constitutional rights at LSP, commencing in January, 2011, by failing to take action to protect him from harm at the hands of co-inmates, which failure resulted in the plaintiff allegedly being attacked and sustaining injury at DWCC on May 27, 2011.

Pursuant to 28 U.S.C. §§ 1915(e) and 1915A, this Court is authorized to dismiss an action or claim brought by a prisoner against a governmental entity or an officer or employee of a governmental entity if satisfied that the action or claim is frivolous, malicious or fails to state a claim upon which relief may be granted.  An action or claim is properly dismissed as frivolous if the claim lacks an arguable basis either in fact or in law.  Denton v. Hernandez, 504 U.S. 25, 31 (1992), citing Neitzke v. Williams, 490 U.S. 319, 325 (1989); Hicks v. Garner, 69 F.3d 22, 24-25

(5th Cir. 1995). A claim is factually frivolous if the alleged facts are "clearly baseless, a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional.'" Id. at 32-33. A claim has no arguable basis in law if it is based upon an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998). The law accords judges not only the authority to dismiss a claim which is based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless, a category encompassing allegations that are fanciful, fantastic and delusional. Denton v. Hernandez, supra, 504 U.S. at 32. Pleaded facts which are merely improbable or strange, however, are not frivolous for purposes of § 1915. Id. at 33; Ancar v. Sara Plasma, Inc., 964 F.2d 465, 468 (5th Cir. 1992). A § 1915 dismissal may be made at any time, before or after service of process and before or after an answer is filed. See Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986).

In his Complaint, the plaintiff alleges that on January 5, 2011, a determination was made by classification officers at LSP to re-classify him from maximum security extended lockdown at Camp C at LSP to the working cellblocks at that Camp. Thereafter, on or about January 12, 2011, while awaiting this transfer, the plaintiff allegedly received a threatening letter which stated that his life was in danger and warned him that he should not move to the working cellblocks. The plaintiff then showed the referenced letter to defendant Delaney and requested to be placed in protective custody. The plaintiff complains, however, that instead of flagging the plaintiff's prison record to note that the plaintiff was entitled to protective custody, defendant Delaney simply had the plaintiff re-classified to maximum security extended lockdown and maintained the plaintiff at his then current housing assignment. Finally, approximately four

months later, on May 12, 2011, the plaintiff and numerous co-inmates housed at Camp C extended lockdown at LSP were temporarily transferred to DWCC because of a threat of flooding at LSP and were placed together in a unit at the transferee institution. According to the plaintiff, unidentified classification officers at LSP apparently reviewed the inmates' records prior to transfer and determined that he could be housed with another inmate. Notwithstanding, upon arrival at DWCC, the plaintiff allegedly advised an unidentified security officer, who was transporting the plaintiff to his cell, that the plaintiff was supposed to be housed in a one-person cell. The officer, however, ignored this assertion and placed the plaintiff in a two-person cell with a co-inmate who allegedly had a history of violence. Several days later, on May 15, 2011, the plaintiff wrote a letter to Col. Nail at DWCC, advising defendant Nail that the plaintiff's cell-mate had threatened to harm the plaintiff and requesting to be placed in a one-person cell. Defendant Nail allegedly failed to respond to the plaintiff's letter, however, and on the night of May 27, 2011, after the lights were turned off, the plaintiff was attacked in his cell by the offending co-inmate and sustained injury. The plaintiff complains that during the referenced attack, unidentified DWCC security officers allegedly walked by the plaintiff's cell but were inattentive and failed to ascertain that the plaintiff was being attacked.

   The plaintiff's allegations fail to rise to the level of a constitutional violation. First, the Court finds that although the plaintiff has named as defendants herein the wardens at LSP and DWCC, Burl Cain and Jerry Goodween, respectively, and the unidentified "John Doe supervisor" of the DWCC unit where he was attacked, the plaintiff has failed to allege sufficient personal involvement by these defendants in the events alleged. In this regard, in order for an official to be found liable under § 1983, the official must have been personally involved in conduct causing an alleged deprivation of a constitutional right or there must be a causal

connection between the actions of the official and the constitutional violation sought to be redressed. Lozano v. Smith, 718 F.2d 756, 768 (5th Cir. 1983). Any allegation that the defendant wardens and supervisor are responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or respondeat superior is alone insufficient to state a claim under § 1983. See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009), citing Monell v. Department of Social Services, 436 U.S. 658, 691 (1978). See also Bell v. Livingston, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of respondeat superior or vicarious liability"). Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, the plaintiff must allege that the deprivation of his constitutional rights occurred either as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law. Lozano v. Smith, supra, at 768.

Applying the foregoing standard, it appears that the plaintiff has insufficiently alleged that either the wardens or the unit supervisor were personally involved in any action which may be characterized as a violation of the plaintiff's constitutional rights. Specifically, the plaintiff makes no assertion that these defendants participated directly or personally in determining where or with whom the plaintiff would be assigned at either LSP or DWCC. Although the plaintiff makes a conclusory assertion that there was a general failure to train and/or supervise prison employees, this conclusory assertion alone is insufficient to establish liability on the part of these defendants. Specifically, in order to state a constitutional claim for liability based on an alleged failure to train or supervise, the plaintiff must allege (1) that the defendants failed to train or supervise subordinate officers, (2) that a causal link exists between the failure to train or

supervise and the violation of the plaintiff's constitutional rights, and (3) that the failure to train or supervise amounted to deliberate indifference. Estate of Davis ex rel. McCully v. City of North Richland Hills, 406 F.3d 375, 381 (5th Cir. 2005). The plaintiff has wholly failed to make such allegations, and his mere conclusory assertion regarding an alleged failure to train and/or supervise is insufficient to support a finding of liability under § 1983. See Yates v. Unidentified Parties, 73 Fed. Appx. 19, 20 (5th Cir. 2003), cert. denied, 540 U.S. 1123 (2004) (concluding that the plaintiff's "vague and conclusional allegation" regarding an alleged failure to train and/or supervise was not sufficient to support liability). Accordingly, the plaintiff fails to state a claim upon which relief may be granted as to these defendants, and they are entitled to dismissal from this proceeding.

Turning to the plaintiff's claim asserted against defendant Delaney, the plaintiff complains that when he requested protective custody in January, 2011, defendant Delaney merely re-classified the plaintiff to maximum security extended lockdown and did not flag the plaintiff's prison record to identify him as being entitled to protective custody. As a result, when the plaintiff and other inmates were transferred to DWCC in May, 2011, the plaintiff was not identified as being in need of a one-person cell. According to the plaintiff, this led to the plaintiff's injury at the hands of his DWCC cell-mate on May 27, 2011.

Under the Eighth Amendment, a prisoner has a constitutional right to be sheltered from the threat of harm or violence at the hands of other inmates. Johnston v. Lucas, 786 F.2d 1254 (5th Cir. 1986); Jones v. Diamond, 636 F.2d 1364 (5th Cir. 1981). Specifically, prison officials "have a duty ... to protect prisoners from violence at the hands of other inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994). Not every prison fight is actionable, however, and in order for there to be liability in connection with this cause of action, there must have existed an intent

on the part of security officers to cause the plaintiff harm or at least a conscious or callous indifference to the plaintiff's right to be protected from such harm.  Johnston v. Lucas, supra, 786 F.2d at 1259.  "Deliberate indifference" is the appropriate standard to be applied in this context, and this term has been defined as including an element of "subjective recklessness" as used in the criminal law.  Farmer v. Brennan, supra 511 U.S. at 837 ("the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference").  The deliberate indifference standard sets a very high bar, and a mere claim of negligence in failing to protect an inmate from harm is not actionable under § 1983.  See Davidson v. Cannon, 474 U.S. 344 347-48 (1986).

Applying the foregoing standard, the Court fails to discern a plausible basis for a finding of liability on the part of defendant Delaney.  When informed by the plaintiff of potential harm if the plaintiff's pending transfer to the Camp C working cellblocks at LSP was implemented, it is undisputed that defendant Delaney took action to protect the plaintiff by ensuring that the anticipated transfer did not take place.  Although the plaintiff employs hindsight to suggest that if, instead, defendant Delaney had placed the plaintiff in protective custody or flagged the plaintiff's prison record to indicate a need for protective custody, the resulting harm which occurred five months later at DWCC would not have taken place, this assertion is based upon pure speculation and, if anything, suggests only negligence on the part of defendant Delaney.  At the time that defendant Delaney made the determination to maintain the plaintiff in maximum security segregated confinement at LSP, the defendant had no way to anticipate that an emergency situation involving possible flooding would later necessitate the plaintiff's unexpected transfer to DWCC or that the plaintiff would then be housed with an inmate who would cause him harm.  Moreover, there is no suggestion in the record that there is any

connection in fact between the threatening correspondence which the plaintiff allegedly received in January, 2011, warning of a potential danger if the plaintiff transferred to the working cellblocks at LSP, and the subsequent attack by the co-inmate in May, 2011.  It is likely, in fact, that the attack by the co-inmate at DWCC was completely unrelated to the generalized threat which the plaintiff received in January at LSP.  Accordingly, in the absence of any suggestion that defendant Delaney, by his actions, intended to cause the plaintiff harm or disregarded an obvious threat to the plaintiff's safety of which the defendant was subjectively aware, there is no basis for the imposition of liability against this defendant.  See Johnston v. Lucas, supra (overturning a finding of liability where a supervising officer, with knowledge of potential danger between two inmates, took remedial action by ordering the inmates assigned to different buildings in the same housing unit, after which one of the inmates bribed a guard, obtained a transfer to the plaintiff's building, and thereafter injured the plaintiff).

      The plaintiff next complains regarding the alleged wrongdoing of defendant Col. Nail at DWCC, who the plaintiff asserts failed to respond to a letter which the plaintiff forwarded on May 15, 2011, requesting to be assigned to a one-person cell and reporting that his cell-mate had "threatened him" with harm.  The Court concludes, however, similarly, that the plaintiff's allegations in connection with this claim are not sufficient to support a finding of § 1983 liability.  Assuming that the plaintiff did in fact send correspondence to defendant Nail prior to the incident complained of, that the correspondence was sufficient to advise the defendant of a threat of harm made to the plaintiff by the cell-mate, and that the defendant did in fact receive the referenced correspondence, these allegations do no more than establish negligence on the part of the defendant which is not sufficient to support liability under § 1983.  In Davidson v. Cannon, supra, the evidence established that the plaintiff had forwarded a note complaining of a

potential attack, and the note had been received by the Assistant Superintendent at the prison who had then relayed the note to a corrections sergeant. The sergeant did not consider the matter to be urgent, however (because the plaintiff had previously approached the sergeant personally when confronted with serious problems), and placed the note on his desk where it was forgotten and remained over the weekend, during which an attack occurred. Although the state courts concluded that there had been negligence on the part of prison officials which led to the plaintiff's injuries, the courts ultimately found that such negligence was not sufficient to support a finding of liability under § 1983. This determination was upheld by the United States Supreme Court. Of particular significance in that case was the fact that, other than the referenced note, the plaintiff "took no steps ... to alert the authorities that he feared an attack, nor did he request protective custody" at the prison." Davidson v. Cannon, supra, 474 U.S. at 346.

In the instant case, similarly, the plaintiff makes no allegation that he took any action at DWCC, other than forwarding the referenced correspondence addressed to defendant Nail approximately 2 weeks prior to the incident (and allegedly making a statement to an unidentified transport officer upon arrival at DWCC), to communicate to DWCC security officers that he feared for his safety or that he needed to be placed in protective custody. For example, the plaintiff makes no assertion that he attempted to communicate his fear to security officers assigned to his cell tier or their immediate superior(s), who worked on the tier and who made regular rounds past his cell. These officials would have been in a much better position to evaluate the risk to the plaintiff and to provide him with appropriate and immediate assistance. Nor does the plaintiff make any assertion that he utilized or attempted to utilize procedures at the prison for obtaining the relief desired, i.e., by making a formal request for protection or by submitting an emergency administrative grievance, either of which procedures potentially could

have provided, more expeditiously, the remedy which he sought. Accordingly, in light of the plaintiff's admission that all he did was write a letter to Col. Nail on May 15, 2011, and then did nothing further for a period of almost two weeks, the Court finds that the plaintiff has failed to state a claim regarding defendant Nail's alleged deliberate indifference to the plaintiff's safety.

Finally, the plaintiff has asserted claims against unnamed classification officers at LSP and unnamed security officers at DWCC. Not only are these defendants not properly named and identified in this case, but even were the Court to allow the plaintiff to engage in discovery and determine the identities of these individuals, it does not appear from the Complaint that he states a claim or cause of action against them. First, all that the plaintiff has alleged relative to the referenced classification officers at LSP is that, when these officers evaluated the appropriateness of assigning the plaintiff and other inmates to share two-person cells upon transfer to DWCC in May, 2011, they failed to notify DWCC officials that the plaintiff should be placed in protective custody and failed to determine that the plaintiff should not be housed with the offending co-inmate, who allegedly had a history of assaulting other inmates. In the Court's view, these are allegations which again amount to mere negligence and so do not rise to the level of a claim of deliberate indifference to the plaintiff's safety. The plaintiff acknowledges that he was informed by DWCC officials, in a response to an administrative grievance, that "LSP staff had reviewed offenders being sent prior to arrival at DWCC and it was determined that most were acceptable for double bunking." The plaintiff further explicitly acknowledges, as discussed above, that defendant Delaney did not flag the plaintiff's prison record in January, 2011, to identify the plaintiff as being in need of protective custody. Thus, when the referenced classification officers reviewed the records of inmates at LSP to determine whether they could safely be housed in two-person cells at DWCC, the officers had no reason to suspect or to

conclude that the plaintiff presented a special safety risk that needed to be communicated to DWCC officials. Thus, any failure to communicate such risk amounted, at most, to negligence for which the classification officers may not be found liable.

Further, the determination by LSP classification officers to assign the plaintiff to share a cell with the particular co-inmate at DWCC is also a claim of mere negligence. Specifically, the plaintiff does not assert that he and the co-inmate were listed on each other's enemy lists at LSP or that they had had any prior conflict of which LSP classification officers should have been aware. Moreover, the plaintiff's mere assertion that the offending co-inmate had "a history of violence in assaulting other prisoners" is not sufficient to establish deliberate indifference on the part of the unnamed classification officers. Not only is the plaintiff's assertion regarding the co-inmate's "history of violence" conclusory but, as a practical matter, "[p]risons are necessarily-dangerous places," which "house society's most antisocial and violent people in close proximity with one another," thereby making it inevitable that "some level of brutality ... among prisoners" may occur. Farmer v. Brennan, supra, 511 U.S. at 858-59 (Thomas, J., concurring). See also Verrette v. Major, 2011 WL 3269319 (W.D. La. July 29, 2011) (dismissing an inmate's failure-to-protect claim upon a finding that, even if the defendant was aware of an inmate's history of violence, "[p]risons are dangerous places housing dangerous people" and "[i]t is unreasonable to believe persons overseeing the classification of inmates for work assignments and housing can prevent all potential prisoner-on-prisoner violence"). In addition, inmates assigned to maximum security extended lockdown at LSP are often those who present the greatest danger to themselves and others, hence their classification to a more restrictive environment. Accordingly, the mere fact that the offending co-inmate may have been involved in one or more prior inmate-on-inmate confrontations does not compel a finding that the determination to house the two inmates in a

two-person cell at DWCC amounted to deliberate indifference. Finally, in Bell v. Wolfish, 441 U.S. 520, 542 (1979), the United States Supreme Court indicated that there is no constitutional principle requiring "one man, one cell." Nor is "double celling" or the overcrowding of inmates a per se unconstitutional condition. Rhodes v. Chapman, 452 U.S. 337, 349 (1981); Duncan v. Puckett, 91 F.3d 137, 1996 WL 400039 (5th Cir. May 27, 1996)) (upholding dismissal, as frivolous, of an inmate's claim of being placed "in a single cell with another inmate"); Thompson v. Stalder, 2008 WL 874138, *7 (M.D. La. April 1, 2008) (finding that "the mere fact that an inmate may be double-celled for a period of time does not, as a matter of law, state a claim of constitutional dimension"); Higgins v. Jefferson Parish Prison, 1988 WL 24137, *3 (E.D. La. March 7, 1988) (claim of being housed in a cell with another inmate dismissed as frivolous). It further follows that double-celling is even more justified when prison officials are presented, as in this case, with an exigent circumstance such as the danger of flooding at LSP, which compels prison officials to place inmates in closer proximity than would otherwise be preferred. See Thompson v. Stalder, supra (double-celling imposed after an influx of large numbers of prisoners in the aftermath of Hurricane Katrina). Thus, the Court is unable and unwilling to impose liability upon the unnamed classification officers at LSP.

      Turning to the plaintiff's claim asserted against the unnamed DWCC security officers, who the plaintiff alleges were assigned to his cell tier on the night of the attack, this claim as well is one of negligence which is not actionable under § 1983. Relative to these defendants, the plaintiff alleges only that, while he was being attacked, "the officers on duty ... would walk down the tier to hit the clock but did not look inside the cells but merely walked against the opposite wall[,] and the cells were made with cross hatch pattern wire which prevented visibility especially at night with lights out." This claim amounts only to an assertion that these

defendants failed to see what they should have seen, which is a classic claim of negligence. The plaintiff implicitly acknowledges that there was no reason for these officers to investigate more thoroughly than they did because, as previously noted, the plaintiff does not assert that he ever communicated to these officers, prior to the attack, that he feared for his safety at the hands of the co-inmate or needed to be placed in protective custody. Moreover, the plaintiff explicitly acknowledges that the cells were dark, that visibility was limited, and that when the officers made rounds on the tier during the attack, the offending co-inmate "would choke plaintiff to prevent him from yelling for help." The plaintiff fails to allege, therefore, that these defendants were subjectively aware of a serious danger to the plaintiff's safety which they ignored, and they are therefore entitled to judgment as a matter of law.

Finally, to the extent that the plaintiff seeks to invoke the supplemental jurisdiction of this Court over claims arising under state law, a district court may decline to exercise supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, having recommended that all of the plaintiff's federal claims be dismissed, the Court concludes that it is appropriate for the Court to decline the exercise of supplemental jurisdiction over the plaintiff's state law claims.

## RECOMMENDATION

It is recommended that the Court decline the exercise of supplemental jurisdiction over the plaintiff's state law claims and that this action be dismissed as legally frivolous and for

failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(g) and 1915A.[1]

Signed in Baton Rouge, Louisiana, on October 9, 2013.

RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

---

1. Note that 28 U.S.C. § 1915(g) provides that, "[i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."